```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
UNITED STATES OF AMERICA,                                            :     12-CR-792 (ARR)
                                                                     :
     -against-                                                       :     NOT FOR ELECTRONIC
                                                                     :     OR PRINT PUBLICATION
HOWARD CLARE,                                                        :
                                                                     :
                           Defendant.                                :     OPINION & ORDER
                                                                     :
-------------------------------------------------------------------- :
                                                                     X
```

ROSS, United States District Judge:

Defendant, Howard Clare, moves for a sentence reduction under 18 U.S.C. § 3582(c), also known as compassionate release, given the COVID-19 pandemic and his multiple medical conditions. Def.'s Mot. Compassionate Release 3–9 ("Def.'s Mot."), ECF No. 131. The government opposes, claiming Mr. Clare's conditions are stable and the facility at which he is held is not experiencing a COVID-19 outbreak. Gov't's Opp'n Compassionate Release 7–9 ("Gov't's Opp'n"), ECF No. 135. For the following reasons, I find Mr. Clare has satisfied the conditions for a sentence reduction and grant the instant motion.

## BACKGROUND

*Conviction and Sentencing*

On December 5, 2013, a jury convicted Mr. Clare of conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(f) and 841(b)(1)(A)(vii); distribution of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and unlawful use of a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Verdict Sheet, ECF No. 69; J. Crim Case 1–2, ECF No. 96. These convictions stemmed from a drug trafficking conspiracy in which Mr. Clare was

1

responsible for more than 33,000 kilograms of marijuana, committed Hobbs Act robbery, kept an arsenal of firearms, and near the end of the conspiracy rose to be its leader's "right hand man." Pre-Sentence Report ¶¶ 4, 7, 11, 17 ("PSR"), ECF No. 75 (filed under seal). On May 12, 2015, I sentenced him to 180 months' imprisonment, the mandatory minimum, of which he has served ninety-seven months. Statement of Reasons 1, ECF No. 97 (filed under seal); Def.'s Mot. 1. In doing so, I noted that he had several children and that he had no prior criminal history. Sentencing Tr. 18, Def.'s Mot., Ex. A, ECF No. 131-1. His current release date is November 9, 2026. Def.'s Mot. 1 (citing *Find An Inmate: Howard Clare*, Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc (last visited Jan. 25, 2021)). The government had offered him a plea of 120 months' imprisonment but he chose to go to trial. Def.'s Sentencing Mem. 2, ECF No. 89.

*BOP Custody*

Mr. Clare currently is held at USP Hazelton, a high-security facility housing 1,466 total prisoners. Gov't's Opp'n 3; *USP Hazelton*, BOP, https://www.bop.gov/locations/institutions/haz (last visited Jan. 25, 2021) ("BOP Hazelton"). As of January 25, 2021, USP Hazelton reports fourteen active COVID cases among prisoners and forty-five among staff. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus (last updated Jan. 25, 2021) ("BOP COVID Cases"). Sixty-six prisoners have tested positive throughout the outbreak at USP Hazelton. *Id.* When he filed the instant motion, Mr. Clare was held at FCI Fort Dix, which is experiencing a significant outbreak. *See* BOP COVID Cases (reporting forty active cases among prisoners and thirty-two among staff as of January 25, 2021, with 1,409 prisoners and forty-five staff having recovered).

Mr. Clare is fifty-three years old and suffers from myriad health conditions, including

Type 2 diabetes mellitus, obesity (body-mass index ("BMI") 35.1), asthma, sleep apnea, and chronic foot pain for which he is proscribed prednisone, a corticosteroid that suppresses his immune system. Def.'s Mot. 4; Medical Records 2–3, 5, 17, Def.'s Mot., Ex. E, ECF No. 133 (filed under seal); *Prednisone and other corticosteroids*, Mayo Clinic, https://www.mayoclinic.org/steroids/art-20045692 (last visited Jan. 25, 2021) ("Corticosteroids [] suppress your immune system[.]").[1] The Centers for Disease Control and Prevention ("CDC") has classified diabetes and obesity with BMI over thirty as comorbidities that "increase[] your risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020) ("CDC Guidelines"). The CDC also has classified asthma and being immunocompromised from using corticosteroids as comorbidities that "might" increase a person's risk for severe illness from COVID-19.[2] *Id.* "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.* The CDC also has noted that "people in their 50s are at higher risk for severe illness than people in their 40s," but "[t]he greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Dec. 13, 2020) ("CDC Older Adults").

---

[1] I include details of Mr. Clare's medical diagnoses here, even though his medical records remain under seal. Mr. Clare has mentioned these details in his public motion papers, *see* Def.'s Mot. 5, and doing so "largely waive[s]" his privacy interest in these facts. *United States v. Ebbers*, 432 F. Supp. 3d 421, 423 n.1 (S.D.N.Y. 2020). His medical records, however, may remain under seal.

[2] The CDC has not recognized sleep apnea as a condition that might increase a person's risk of serious complications from COVID-19, but some evidence shows that it may. *See* Tori Rodriguez, *Obstructive Sleep Apnea as a Potential Risk Factor for COVID-19: Expert Interview*, Pulmonology Advisor (Aug. 12, 2020), https://www.pulmonologyadvisor.com/home/topics/obstructive-sleep-apnea-osa/obstructive-sleep-apnea-may-increase-risk-for-coronavirus-disease-2019.

Despite his health issues, Mr. Clare has taken steps toward rehabilitation while incarcerated. He has shared his carpentry skills with other prisoners, taken course work for a GED, and engaged in several educational programs, including drug education and history courses. Def.'s Mot. 10; Progress Report 1, Def.'s Mot. Ex. C, ECF No. 132 (filed under seal); Letter from Howard Clare 1 ("Clare Letter"), Def.'s Mot., Ex. D, ECF No. 131-7. Further, his lack of disciplinary infractions has earned Mr. Clare at least 651 days of jail credit. Progress Report 1. He has submitted several letters of support from friends, one of whom describes him as "a hardworking, kind and loving person." Letter from Dane Bent 1 ("Bent Letter"), Def.'s Mot., Ex. D, ECF No. 131-7. Another notes that "[h]e always helped everyone, especially older individuals on whose homes he worked, notwithstanding the fact that they could not always pay him in full." Letter from T. Anthony Hayles 1 ("Hayles Letter"), Def.'s Mot., Ex. D, ECF No. 131-7. Another states that she believes Mr. Clare has "reform[ed]" and "can once again be a model father and citizen assimilated back into society." Letter from Magdalene Mitchell 2 ("Mitchell Letter"), Def.'s Mot., Ex. D, ECF No. 131-7.

*Procedural History*

Mr. Clare petitioned the warden of FCI Fort Dix for compassionate release around August 2020. Warden Correspondence, Def.'s Mot, Ex. B, ECF No. 131-2. He has yet to receive a response. *Id.* On October 19, 2020, he moved for compassionate release *pro se* before this court. Mot. Reduce Sentence, ECF No. 125. I appointed Michael Hueston as counsel. Text Order (Oct. 28, 2020). Mr. Clare filed a renewed motion through counsel on December 18, 2020. Def.'s Mot. The government filed its opposition on January 12, 2021, Gov't's Opp'n, and defendant filed his reply on January 15, 2021, Def.'s Reply, ECF No. 136.

4

**LEGAL STANDARD**

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting a defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (citation and quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id*. at 237–38 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) does not bind a district court, *see id*. at 237, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the

5

Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios. First, "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."). Second, "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id.* cmt. 1(A)(ii). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
> (5) any pertinent [Sentencing Commission] policy statement . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if

"[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

## DISCUSSION

### I. Mr. Clare Has Shown Extraordinary and Compelling Reasons Justify His Release.

Defendant argues that the COVID-19 pandemic and his various comorbidities that increase his risk of severe illness from the virus constitute extraordinary and compelling reasons supporting his release.[3] Def.'s Mot. 3–9. As many courts have held, the COVID-19 pandemic combined with a defendant's high-risk conditions recognized by the CDC may meet this standard. *See Cato*, 2020 WL 5709177, at *4 (collecting cases). This is in part because "[t]he nature of prisons – crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products – put those incarcerated inside a facility with an outbreak at heightened risk." *United States v. Park*, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020); *see also United States v. Skelos*, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prison are powder kegs for infection. People in jails and prisons cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning and laundry, avoid frequently touched surfaces, or sanitize their own environment."). Making matters worse, the BOP's response to the pandemic largely has failed. *See A State-by-State Look at Coronavirus in Prisons*, The Marshall Project, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons (last updated Jan. 22, 2021) (noting

---

[3] Mr. Clare has satisfied § 3582's exhaustion requirement because he petitioned the warden of Fort Dix more than thirty days before filing the instant motion and never received a response. *See* Warden Correspondence.

7

that as of January 22, 2021 44,957 people have contracted COVID-19 in federal custody).

Here, Mr. Clare suffers from two conditions that the CDC has determined increase his risk of severe illness—Type 2 diabetes mellitus and obesity—and two conditions that the CDC has determined might increase his risk of severe illness—asthma and being immunocompromised from taking corticosteroids.[4] Medical Records 2–3, 5; CDC Guidelines. The combination of these conditions and his age further increase his risk. CDC Guidelines; CDC Older Adults.

The government does not contest Mr. Clare's diagnoses but claims that his conditions are "relatively stable" and that infection rates at USP Hazelton are "being contained." Gov't's Opp'n 7. First, even assuming some of Mr. Clare's conditions are stable, the CDC Guidelines state that merely having certain underlying medical conditions increases a person's risk of severe illness from COVID-19, regardless of whether they are stable, and the combination of multiple conditions further increases that risk.[5] CDC Guidelines. Second, while USP Hazelton reports only fourteen active COVID cases among 1,466 prisoners and forty-five among staff, this data show that the virus is present in the facility. BOP COVID Cases; BOP Hazelton. Given the BOP's inadequate prevention measures and the nature of prisons as "powder kegs for infection," *Skelos*, 2020 WL 1847558, at *1, Mr. Clare still faces an imminent risk of contracting COVID-19 that is

---

[4] He also suffers from sleep apnea, which the CDC has not recognized as a high-risk condition but other authorities have. Medical Records 17; *see United States v. Kwok-Ching Yu*, No. 90-CR-47(6) (AT), 2020 WL 6873474, at *2 (S.D.N.Y. Nov. 23, 2020).

[5] The government's cases to the contrary are unpersuasive. In *United States v. Cajigas*, the court relied on the fact that the defendant had "no other health conditions" besides obesity and pre-diabetes, while Mr. Clare suffers from several more high-risk comorbidities. No. 08-CR-391 (VM), 2020 WL 6625210, at *2 (S.D.N.Y. Nov. 11, 2020). In *United States v. Santiago*, the court relied on research reflecting an outdated understanding of the virus's effects. No. 92-CR-563 (BMC), 2020 WL 2475068, at *3 (E.D.N.Y. May 13, 2020). And the court in *United States v. Mood* did not consider that the CDC Guidelines connect increased risk to having certain medical conditions, regardless of whether they are stable. No. 19-CR-113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020).

unacceptable in light of his medical conditions. Thus, I find Mr. Clare has met his burden of showing extraordinary and compelling reasons support his release.

## II.     Extraordinary and Compelling Reasons Outweigh the Section 3553(a) Factors.

Mr. Clare also has shown that the COVID-19 pandemic and his high-risk medical conditions outweigh the § 3553(a) factors. First, on the one hand, I recognize that Mr. Clare's conduct was undoubtedly serious, as he trafficked thousands of pounds of marijuana, kept an arsenal of firearms, and near the end of the conspiracy rose to be its leader's "right hand man." PSR ¶¶ 4, 7. On the other hand, he has demonstrated significant mitigating personal characteristics. Mr. Clare has no prior criminal history. Sentencing Tr. 18. He has several children and maintained a career as a carpenter before his arrest. *Id.*; Mitchell Letter 1; Hayles Letter 1. While incarcerated, he has shared his carpentry skills with other prisoners, engaged in several educational programs, and earned 651 days of jail credit through his lack of disciplinary infractions. Def.'s Mot. 10; Progress Report 1; Clare Letter 1. His letters of support confirm that he has reformed and will contribute positively to his community upon release. *See* Bent Letter 1; Hayles Letter 1; Mitchell Letter 2.

Second, Mr. Clare has served a significant amount of his sentence, which reflected the mandatory minimum of 180 months' imprisonment for the combination of his convictions and constituted eighty-five percent of the bottom of his advisory guidelines sentence. Sentencing Tr. 19. He has been incarcerated for ninety-seven months, more than sixty percent of his original sentence when taking good time credits into account. Def.'s Mot. 1. Moreover, had he chosen not to go to trial, the government would have accepted a plea of 120 months' imprisonment. Def.'s Sentencing Mem. 2.

Third, Mr. Clare argues that he received a sentence disparate from those of his co-

9

conspirators who cooperated with the government and received sentences of seventy months or less. Def.'s Mot. 11. Although I acknowledge the value of rewarding cooperation with the government, as I did in this case, it is notable that defendant, with credit earned for good time, would serve a year longer than the leader of the conspiracy and already has served more than twice as long as cooperator Ian Hamilton who was the leader's "lieutenant[]." *Find an Inmate: Marcus Maragh*, BOP, https://www.bop.gov/inmateloc (last visited Jan 25, 2021) (noting release date of December 23, 2023); Minute Entry, *United States v. Maragh*, No. 11-MJ-112(2) (LB), ECF No. 5 (noting arraignment date of February 1, 2011); PSR ¶ 3; Def.'s Mot. 11 n.25. This is so although through most of the conspiracy Mr. Clare functioned as a mainstream worker, becoming second in command to the leader only near the conspiracy's close. PSR ¶ 7.

On balance, given the evidence of Mr. Clare's rehabilitation, the elevated risk he faces of severe illness from COVID-19, and the length of time he has been incarcerated already, I believe a sentence of time served together with certain conditions of supervised release would reflect the seriousness of his offenses, afford adequate deterrence, and allow him access to better medical care were he to contract COVID-19.[6]

## CONCLUSION

I therefore grant Mr. Clare's motion for a sentence reduction to a period of time served and impose, as a special condition of his supervised release, a requirement that he serve the first six months in home confinement enforced by location monitoring using specific technology to be determined by the Probation Department. The location of defendant's period of home detention shall be determined by the Probation Department. Additionally, I reimpose the special conditions

---

[6] The government does not argue that Mr. Clare would be a danger to the public if released. For the same reason, I find his sentence reduction is consistent with the Sentencing Commission's policy statements.

of supervised release imposed in his original Judgment and Commitment. J. Crim. Case 5.

SO ORDERED.

                                                                                               ____/s/_____
                                                                                               Allyne R. Ross
                                                                                               United States District Judge

Dated:        January 25, 2021
                Brooklyn, New York